# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **FRANK NOVAK,** *individually, and on behalf of all others similarly situated,* | |
| Plaintiff, | Civil Action No. 2:22-cv-12643 |
| | CLASS-ACTION |
| v. | |
| **NORTHVILLE MARKET CENTER, INC. d/b/a KW ADVANTAGE** | **Jury Trial Demanded** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Frank Novak ("Plaintiff" or "Mr. Novak"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, submits his Complaint against Defendant Northville Market Center d/b/a KW Advantage ("KWA"). In support thereof, Plaintiff states as follows:

## NATURE OF THE CASE

1. Plaintiff Frank Novak ("Plaintiff" or "Mr. Novak") brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendant KWA. KWA violated Plaintiff and the putative class-members' rights by placing solicitation calls to Plaintiff and the putative class members' cellular telephones using a pre-recorded voice without their prior express consent, and by making two or more solicitation calls to residential subscribers whose numbers were registered on the Do Not Call Registry. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations.

## BACKGROUND ON THE TCPA

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. §

227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3)

8. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790,* THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

11. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising

PLAINTIFF'S CLASS-ACTION COMPLAINT

under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. This Court has personal jurisdiction over Defendant, KWA which is headquartered, incorporated and systematically conducts business in the State of Michigan.

13. Additionally, Defendants called Plaintiff on his cell phone with a "248" area code, which is associated with Metropolitan Detroit.

14. Plaintiff resided within this District at all times relevant hereto. Plaintiff received the calls at issue and experienced the associated harm within this District.

15. Accordingly, personal jurisdiction exists and venue is proper pursuant to 28 U.S.C. §1391 (b)(1) and §1391 (b)(2).

**PARTIES**

16. Plaintiff, Frank Novak is a natural person who resided in Farmington Hills, Michigan at all times relevant hereto.

17. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

18. Defendant KWA is a Southeast Michigan real estate agency affiliated with the national franchise Keller Williams Realty, Inc.

19. KWA maintains its headquarters at 39500 Orchard Hills Place, Suite 100, Novi, Michigan 48375-5333.

20. Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

21. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

22. At all times relevant hereto, Plaintiff, Frank Novak owned a cell phone, the number for which was (248) XXX-7217.

23. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on February 19, 2004.

24. Plaintiff registered that cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

25. At all times relevant hereto, Plaintiff used that cell phone primarily for residential purposes.

26. Between July and October of 2020, Defendant left two pre-recorded voicemails on Plaintiff's cell phone soliciting real estate services Mr. Novak did not request, want or need.

27. Plaintiff never sought information about realtor services and did not consent to receive telemarketing calls from Defendant.

28. Plaintiff did not list or advertise his home for sale prior to those calls.

29. At the time of the aforementioned calls, Plaintiff had no established business relationship with KWA, Edwards or Keller Williams generally.

30. These calls were not made for "emergency purposes," but rather for solicitation purposes.

31. Sometime around July 2020 and again on or around October 3, 2020, KWA left a pre-recorded a voicemail featuring a pre-recorded generic message from former KWA realtor, Marcus Edwards. The recorded message stated as follows:

> Hey this is Marcus Edwards, I'm with Keller Williams Realty and I just sold a home in this neighborhood, and I have few more buyers who are looking to purchase a home just like yours. I wanted to know if you'd be interested in selling it between now

and over the next year we might be able to get it sold for top dollar quickly without it even hitting the Multiple Listing Service: no hassles, no problems.  I can be reached at 248-716-5273.  Again, this is Marcus Edwards and I'm with Keller Williams Realty and I can be reached at 248-716-5273.  Thank you very much and talk to you soon.

32. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been invaded by Defendant.

33. Upon information and belief, other KWA agents in addition to Edwards left similar pre-recorded messages to consumers soliciting KWA real estate services.

34. The foregoing acts and omissions were in violation of the TCPA.

### **Direct and Vicarious Liability**

35. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

36. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

37. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

38. Defendant KWA hired, encouraged, permitted, and enjoyed the benefits of mass robocalling by agents such as Marcus Edwards.

39. On information and belief, Defendants sought a financial benefit from the prerecorded voicemails it placed to the putative class members as it attempted to derive business from these calls.

40. Mr. Edwards and other KWA realtors had actual and/or apparent authority to act on behalf of KWA.

41. KWA also ratified Edwards' violations of the TCPA by accepting leads and deriving profit from sales imitated by unlawful robocalls.

42. Defendant KWA acted as a principal to Mr. Edwards and/or other KWA realtors, who acted as KWA agents.

43. Defendant KWA is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from Mr. Edwards' and/or other KWA agents' unlawful calls.

44. For the counts identified below, Defendant KWA is vicariously liable as it encouraged and benefitted from its agents' violative conduct.

45. For the counts identified below, KWA agents' who placed the subject calls would be directly liable for the unlawful calls at issue.

## CLASS ALLEGATIONS

46. Plaintiff brings this claim on behalf of a class, pursuant to Federal Rule of Civil Procedure 23.

47. Plaintiff seeks to represent the following classes:

**Pre-recorded Voice Class:** All persons in the State of Michigan to whom KWA, by and through its real estate agents, placed calls to the person's cellular phone, which included a pre-recorded message, from four years before the filing of this Complaint through the date a class is certified; and

**Do-Not-Call Registry Class:** All persons in the State of Michigan where: (1) the person's telephone numbers were on the National Do-Not-Call Registry; (2) the person received two or more calls were on behalf of KWA within twelve months; (3) those calls were for the purpose of soliciting the real estate services of any KWA agent, from four years prior to the filing of this Complaint through the date a class is certified.

48. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

49. The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

50. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

51. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them not to vigorously pursue this action.

52. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

53. Class Members are so numerous and that their individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

54. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

   a. Whether Defendant, or someone operating on its behalf, placed prerecorded voice calls to the cell phones of Plaintiff and the putative class members without obtaining the recipients' prior express written consent;

   b. Whether Defendant placed prerecorded voice calls to the cell phones of Plaintiff and the putative class members;

   c. Whether Defendant's conduct violates 47 U.S.C. § 227(b);

   d. Whether Defendant's conduct violates 47 U.S.C. § 227(c) and the corresponding rules and regulations implementing the TCPA; and,

   e. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

55. Plaintiff and the putative class members have claims arising out of Defendant's

uniform course of conduct, namely improperly placing prerecorded voice calls to the Plaintiff and the putative class members.

56. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

57. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgements. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

58. The Class representative was at all times relevant hereto a resident of Oakland County in the State of Michigan. Accordingly, this District is an appropriate forum in which to adjudicate this dispute.

59. Based on discovery and further investigation, Plaintiff may, in addition to

moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

## COUNT I
## DEFENDANT VIOLATED 47 U.S.C. § 227(b)

60. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

61. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

62. KWA, through its agent Mr. Edwards, left pre-recorded voicemails on Plaintiff's cell phone in an effort to solicit Plaintiff's business without Plaintiff's express written consent

63. Defendant's calls were not made for "emergency purposes."

64. Defendant's acts, as described above were done with willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

65. The acts and/or omissions of Defendant were absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

66. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

WHEREFORE, Plaintiff, FRANK NOVAK, respectfully prays for judgment as follows:

1) Enter an order against Defendants pursuant to Rule 23 of the Rules of Civil Procedure, certifying this action as a class action and appointing Plaintiff as the class representative;

2) Enter an order appointing Kimmel & Silverman as class counsel;

3) Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation (of both 227(b) and 227(c)), or up to $1,500 per violation of each sub-section if Defendant willfully violated the TCPA;

4) Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from calling numbers registered on the National Do Not Call Registry;

5) Award Plaintiff and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration; and,

6) Award Plaintiff and the class such further and other relief, including but not limited to any applicable pre-judgment and/or post-judgment interest, and any other relief the Court deems just and appropriate.

## COUNT II
## DEFENDANT VIOLATED 47 US.C. § 227(C)(5) AND 47 C.F.R. § 64.1200(C)

67. Mr. Novak incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

68. Mr. Novak brings this Count individually and on behalf of all others similarly situated.

69. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

70. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per

violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

71. In addition, the TCPA allows the Court to enjoin KWA's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

72. By calling Mr. Novak and the putative class members after their numbers were registered on the National Do Not Call Registry, KWA violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

73. KWA knew or should have known that Mr. Novak and the putative class members had their numbers registered on the Do Not Call Registry.

74. Novak and the putative class members are entitled to damages of $500.00 per violation for each call placed by KWA and up to $1,500.00 per violation if the Court finds KWA willfully violated the TCPA.

**Prayer for Judgment**

WHEREFORE, Plaintiff Frank Novak, individually, and or behalf of all other similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant KWA, LLC pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Novak as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C as class counsel;

c. Enter judgment in favor of Mr. Novak and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) and up to $1,500 per violation of each subsection if KWA, LLC willfully violated the TCPA;

d. Enter a judgment in favor of Mr. Novak and the putative class that enjoins KWA from violating the TCPA's regulations prohibiting KWA from calling/texting numbers registered on the National Do Not Call Registry;

e.  Award Mr. Novak and the class all expenses of this action, and requiring KWA to pay the costs and expenses of class notice and administration; and,

f.  Award Mr. Novak and the class such further and other relief the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, FRANK NOVAK, demands a jury trial in this case.

Respectfully submitted,

Dated: November 2, 2022

By: */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888 x 104
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

PLAINTIFF'S CLASS-ACTION COMPLAINT